UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   10 CR 26 |
| vs. | ) | Judge Gettleman |
| | ) | |
| DANIELLE JOHN | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following memorandum in connection with the sentencing hearing of defendant Danielle John scheduled for May 11, 2012:

**I.     Introduction.**

On November 29, 2010, John appeared before this Court and pled guilty to Counts Four and Six of the indictment which charged her with knowingly and in reckless disregard of the fact that aliens, namely, Loni (Person 4) and Diamond (Person 5), had remained in the United States in violation of law, concealed, harbored and shielded from detection, and attempted to do so, Loni and Diamond in residences, vehicles, and massage parlors, for purposes of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(B)(I), and aided and abetted the commission of these acts, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(II).  This memorandum addresses the applicability of an enhancement pursuant to Guideline § 2L1.1(b)(8)(A), some of the factors set forth in Title 18, United States Code, Section 3553, and the reasons for the government's recommendation that this Court sentence John to a period of probation.

**II.     Sentencing Guidelines Calculations.**

The parties and the Probation Officer agree that the base offense level for John's offense is 12 pursuant to Guideline § 2L1.1(a)(3) and that this level is increased two levels pursuant to Guideline § 2L1.1(b)(7)(A) because bodily injury was inflicted during the course of the offense. The government, as set forth in the Plea Agreement, believes that John's offense level also should be increased pursuant to Guideline § 2L1.1(b)(8)(A) because an alien was involuntarily detained through coercion or threats. John disagreed in the Plea Agreement that this enhancement applies to her case. The Plea Agreement provided a two level increase in John's offense level for this enhancement. The Probation Officer, however, correctly noted in the Presentence Report that, pursuant to Guideline § 2L1.1(b)(8)(A), the offense level must be increased to 18 if the Court finds that the involuntary detention enhancement applies. *See* USSG § 2L1.1(b)(8)(A) ("If an alien was involuntarily detained through coercion or threat, or in connection with a demand for payment, ... while the alien was ... harbored in the United States, increase by **2** levels. If the resulting offense level is less than level **18**, increase to level **18**.") (emphasis in original).

The testimony of Loni and Diamond at trial established that they were involuntarily detained through coercion and threats. Loni and Diamond had no access to money or to their personal identification documents, including their passports, after they joined defendant Alex Campbell's "Family." Loni and Diamond thus lacked the financial means and the requisite documentation to allow themselves to escape Campbell's control. Loni and Diamond were completely dependent on the Family for food and housing.

Campbell's control over Loni and Diamond extended beyond ensuring that they lacked the practical means by which to leave the Family. Campbell used both physical and psychological means

to control Loni and Diamond as well. Loni and Diamond testified that they were beaten if they questioned Campbell's authority over them. Diamond also testified that Campbell told her that, if she tried to leave, he would cut out her tattoos, inject heroin into her veins, and leave her body in a drug house.

The real question is not whether Loni and Diamond were involuntarily detained through coercion and threats but rather whether John is accountable under Guideline § 2L1.1(b)(8)(A) for their involuntary detention. John should receive the involuntary detention enhancement because John, though herself a victim of Campbell's coercion and threats, aided and abetted Campbell's coercive control over Loni and Diamond. John gave the money Loni and Diamond earned from massages to Campbell after they became Family members, obtained and secreted their identification documents, and reported to Campbell violations by Diamond of Family rules. John, then, by carrying out Campbell's orders in these ways, furthered Campbell's involuntary detention of Loni and Diamond and enabled the involuntary detention to occur. This totality of circumstances supports the Section 2L1.1(b)(8)(A) enhancement in John's case. *See, e.g., United States v. Alapizco-Valenzuela*, 546 F.3d. 1208, 1219 (10th Cir. 2008) (district court properly applied Section 2L1.1(b)(8)(A) enhancement based on totality of circumstances where aliens held at a stash house, ordered at gunpoint to contact family and friends for more money for transportation, robbed of personal belongings and shoes to prevent escape, and prevented from leaving minivan during transport).

John should also receive the involuntary detention enhancement because Campbell's coercion of and threats to Loni and Diamond were reasonably foreseeable to her. *See* USSG § 1B1.3(a)(1)(B) ("[Specific offense characteristics shall be determined] in the case of jointly undertaken criminal activity..., all reasonably foreseeable acts and omissions of others in furtherance of the jointly

3

undertaken criminal activity, that occurred during the commission of the offense of conviction....").
John herself was the recipient of Campbell's control and threats. John knew from her own status as a Family member that all money was given to and received from Campbell. John had confiscated the personal identification documents of Loni and Diamond at Campbell's direction.[1] Campbell told John that he would find her and kill her if she ever left him.

**III.   Section 3553 Factors.**

    **A.   Nature and Circumstances of Offense and the History and Characteristics of Defendant.**

Campbell recruited women to work for him, as prostitutes or masseuses, or both, through a calculated series of steps, beginning with seduction and promises of fulfilment of dreams and ending, for the women involved, in forced labor without pay and physical and emotional abuse. Campbell targeted young women who were vulnerable through, among other things, their isolation from family members, which existed in John's case, or, their illegal or tenuous immigration status.

    John's mother raised John as a single parent and John was required to work at a young age in order to support herself and her mother. John finished high school after making a personal commitment to herself to do so in order to honor the memory and wishes of a family friend who had passed away. Campbell met John when she was 19 years old and immediately, upon meeting John, zeroed in on her vulnerabilities, isolation from her family, and her age-related lack of judgment. Campbell asked John about her hopes and dreams and she told him she wanted to get married, to have children, and to run her own business. Campbell told John he would take care of her and that

---

    [1]    John did obtain for Loni an airplane ticket and she did give Loni her passport back in order to allow Loni to return home. But John took these actions at Campbell's direction and only after Campbell gave John permission to do so.

4

he could fulfill her dreams. John began to work for Campbell at a massage business in Chicago within weeks of meeting him. Campbell made John make a certain quota or amount of money each day and to give the money to him.

Campbell told John about the "Family" a short time after meeting her. Campbell initially described the Family as a group of people like a real family. Campbell told John that everyone in the Family had everyone else's back. John understood from Campbell's description that all of the Family members were women except for Campbell and that all of the women in the Family had to love him. Campbell described to John the rules he required Family members to follow. These rules included: (1) no showing of emotion; (2) calling Campbell "Daddy"; (3) working each day from 10:00 am to 10:00 pm; (4) no contact with others unless approved by Campbell; (5) no exchanging of telephone numbers with anyone; (6) answering the phone whenever Campbell called; (7) turning over all money to Campbell; (8) doing everything Campbell ordered; and (9) not asking questions. John joined Campbell's Family on July 4, 2006. John remained with Campbell, with the exception of a brief period (approximately one week) at the end of 2009, and lived under these rules until her arrest on January 13, 2010.

The reality of life in the Family differed vastly from Campbell's early description. Campbell punished John if she broke the Family rules or if she failed to enforce the Family rules as to the other Family members. Campbell punished John by physically beating her with his hands, fists and belts. Campbell made John strip down and he then beat her with a belt across her bare buttocks and upper legs. One of the belts that Campbell used had metal holes in it and this belt hurt the most as a result. Campbell also punished John by yelling at her, grounding her, and taking things important to her away from her. Campbell also maintained control over John by employing various forms of

5

emotional abuse. Campbell told John to choose between her mother and him when John was pregnant with their first child. John chose Campbell and thereafter Campbell controlled the amount of contact and any communication John had with her mother. Campbell required that John return to working twelve hour days after only approximately four days of John giving birth to their first child. John saw her first child only a limited number of times the first year of the child's life.

In late 2008, Campbell and John opened a massage business in Mount Prospect, Illinois called the Day and Night Spa. Campbell recruited a number of women, including Loni and Diamond, Neither Loni nor Diamond had legal status in the United States when they began to work for Campbell. John performed a variety of acts at Campbell's direction as to these other women. John, for example, at Campbell's direction, trained Diamond as a prostitute by showing her sex positions to use with customers, how much to charge, and how to talk to potential customers. Campbell required John to enforce the rules of the Family and to report rule violations by the other Family members to him. Campbell beat Diamond at times after receiving these reports. But Campbell punished John herself if she did not give him these reports or perform the responsibilities he placed on her.

**B.     The Need for the Sentence to Reflect the Seriousness of the Offense and to Provide Defendant with Needed Training.**

John committed a serious offense. John's assistance to Campbell enabled him to subject illegal aliens to physical and emotional abuse, forced labor, involuntary detention, and isolation from family and friends. But John's positive transformation and her rehabilitation began almost immediately upon being freed from Campbell's influence. John began to cooperate with the government shortly after her January 2010 arrest. John testified in both the mistried first trial and

the second full trial of the case. John had to re-live through preparation sessions and in court testimony many traumatic and painful events. John's detailed testimony about Campbell and his Family provided the jury with a powerful inside view of Campbell's unrelenting abuse of the victims in this case. .

A sentence of probation will reflect the fact that John did what she did because Campbell told her to do it and will best allow John, while being punished for her crime, to gain her own footing in life. John can receive through probation the training and counseling she needs to survive on her own. John recognizes what she did was wrong and she does not require imprisonment to deter her from similar future conduct. John has had some recent difficulty while on pretrial release. But, given John's earlier extended period of making positive strides to create a new life for herself and her children, the prospect of John turning herself around again and successfully completing probation are good. A sentence of probation will give to John that which Campbell took away: the opportunity to build a positive, self-sustaining life and to fulfill the bright promise which she possesses inside.

**IV.  Conclusion.**

For the foregoing reasons, the government believes that, with acceptance of responsibility, John's final adjusted offense level is 15 and her Guidelines range is 18-24 months. The government recommends, in light of John's extraordinary cooperation and after consideration of the Section 3553

factors, that John receive a sentence of probation in this case.

                          Respectfully submitted,

                          **PATRICK J. FITZGERALD**
                          United States Attorney

By:    s/Diane MacArthur
            **DIANE MacARTHUR**
            **STEVEN GRIMES**
            **JOHN RICHMOND**
            United States Attorney's Office
            219 South Dearborn Street
            Chicago, Illinois 60604
            (312) 353-5352

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that the following document:

GOVERNMENT'S SENTENCING MEMORANDUM

was served on May 8, 2012, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s Diane MacArthur
Diane MacArthur
Assistant United States Attorney
Suite 500
219 South Dearborn Street
Chicago, Illinois
(312) 353-5352