IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 10 CR 0026 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| ALEX A. CAMPBELL, also known as "Dave" ) | |
| and "Daddy" ) | |

## **MEMORANDUM OPINION AND ORDER**

A jury found defendant Alex A. Campbell ("Campbell") guilty on the following eleven counts: obtaining labor and services of others by force, serious harm and abuse, in violation of 18 U.S.C. § 1589 (Counts 1, 2 and 3); concealing, harboring and shielding illegal aliens for commercial advantage, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II) & 1324(a)(1)(B)(i) (Counts 4, 5, and 6); concealing identity and immigration documents, in violation of 18 U.S.C. § 1592(a) (Counts 7, 8, and 9); sex trafficking, in violation of the Trafficking Victim's Protection Act, 18 U.S.C. § 1591(a) (Count 10); and extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) (Count 11).  Following the jury's verdict this court granted Campbell's motion for acquittal as to Count 5.  On November 26, 2012, Campbell was sentenced on all remaining counts to life imprisonment.  On October 21, 2014, the Seventh Circuit affirmed Campbell's conviction.  United States v. Campbell, 770 F.3d 556 (7th Cir. 2014).

Campbell has filed the instant *pro se* post-trial motion requesting a new trial based on newly discovered evidence pursuant to Fed. R. Crim. P. 33(b).  For the reasons discussed below, Campbell's motion for a new trial is denied.

# BACKGROUND[1]

Campbell recruited young women who were in the United States illegally to work for him as masseuses, and, eventually, prostitutes. Campbell enticed the women into joining what he called his "Family" by initially offering them places to live and jobs in his massage parlors without any expectation of performing sexual acts. After luring the women and gaining their trust, he isolated them from family and friends and confiscated their identification, immigration documents, and money. He subsequently renamed the women, branded them with tattoos, physically and mentally abused them, threatened to have them deported, and forced them to work as prostitutes for his financial benefit. Eventually, one of Campbell's victims turned to law enforcement, after which he was indicted. One of Campbell's victims, Masha,[2] along with others testified on behalf of the government at his trial.

# DISCUSSION

## A.   Legal Standard

Campbell argues that he is entitled to a new trial on the basis of newly discovered evidence. Fed. R. Crim. P. 33 permits a district court to vacate any judgment and grant a new trial "if the interest of justice so requires." To show that the interest of justice requires a new trial, a defendant must provide evidence that: (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material and

---

[1] The following abbreviated facts are more fully described in the Seventh Circuit's opinion in Campbell, 770 F.3d at 559-60.

[2] In light of the protective order entered in this case that prohibited the disclosure in the public record of the full names of victims referenced in the indictment, the court refers to the victim at issue here by the fictitious name given to her by Campbell and used during trial.

not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. See United States v. Hagler, 700 F.3d 1091, 1101 (7th Cir. 2012).

**B.     Analysis**

Campbell argues that the government "withheld pertinent evidence" and "conspired with its' [sic] witnesses to commit fraud" by not disclosing that Masha "had participated in a scheme of an arranged marriage in order to get a visa." Campbell concedes that prior to trial the government informed him that Masha was previously married. However, Campbell contends that the government concealed that Masha's marriage was a part of a scheme to gain a favorable immigration status. According to Campbell, "the government contributed to helping [Masha] hide [her] fraudulent [marriage] scheme, so that [she] could" obtain a "T/visa from her false testimony against [him]."

Campbell asserts that evidence of Masha's allegedly fraudulent marriage "would have had a major impact on the jury," as he could have questioned Masha's "ability to be truthful" and "motive to establish herself as a victim." Additionally, Campbell argues that based on her purportedly false marriage, it was unfair for the government to present Masha to the grand jury and jury as "an illegal immigrant in the U.S. alone." In his reply brief, Campbell complains that the government's failure to disclose this evidence violated his Fifth, Sixth, and Seventh Amendment rights.

In support of his theory that Masha was involved in an "illegal marriage," Campbell points to two documents, each labeled "Rejection Notice," from the U.S. Bureau of Citizenship and Immigration Services ("USCIS"). The first document, dated December 29, 2008, states that Masha's "application to Adjust Status from Temporary to Permanent Resident (Form I-698)" is

rejected because given the applicant's birth date she cannot establish that she was present in the United States prior to January 1, 1982. The second document, dated December 12, 2008, states that Masha's I-485 Application to Register Permanent Residence or Adjust Status is being returned because the form was not fully completed.

The government argues that Campbell's motion for a new trial should be denied because he "offers no 'new' evidence, or any evidence of any sort, to support his claim of marriage fraud and the government is not aware of the existence of any such evidence." According to the government, Masha was married on or about April 17, 2009, and legally divorced on November 18, 2009, at which time she restored her maiden name. The government asserts that it "has located no immigration-related filing by [Masha] under her married name," and that Masha has informed the government that she did not apply for any immigration benefits during her brief marriage. The government contends that Masha did not submit an application for a T-Visa until August 15, 2011, two years after her divorce, and that she used her maiden name on the application.

While it appears that the August 9, 2011, letter sent to defense counsel by the government disclosing the victim's previous marriage incorrectly stated that the victim "was married prior to the time she met Campbell,"[3] Campbell has not established that he is entitled to a new trial under Rule 33. As the government contends, Campbell has not actually presented new evidence. Instead, Campbell's motion merely submits a theory to the court that is

---

[3] The August 9, 2011, letter states that the victim "was married prior to the time she met Campbell." However, trial testimony established that Masha met Campbell as early as September 2008, and the government's response brief asserts that Masha was married from April 17, 2009, to November 18, 2009.

unsupported by any evidence. Campbell's reliance on the two USCIS documents is misplaced, as both were submitted by Masha prior to her marriage. Moreover, neither document references Masha's marriage status, and the government states in its response brief that the original applications Masha executed properly reported that she was not married. Even if Campbell could establish that Masha had engaged in a fraudulent marriage, Campbell has not presented any evidence to support his allegation that the government knew about it before trial, thereby violating his rights under Brady v. Maryland, 373 U.S. 83 (1963). United States v. Bagley, 473 U.S. 667, 676-77 (1985) (holding that Brady prohibits the government from suppressing evidence that could be used to impeach a government witness).

Assuming *arguendo* that Campbell presented conclusive evidence that Masha engaged in a fraudulent marriage in order to obtain a favorable immigration status in the United States, such evidence would merely go the victim's credibility. The Seventh Circuit has repeatedly held that to show that the interest of justice requires a new trial, under Rule 33, a defendant must provide evidence that is not merely impeaching. See, e.g., Hagler, 700 F.3d at 1101; see also United States v. Ervin, 540 F.3d 623, 631 (7th Cir. 2008). Campbell admits in his motion that had he known about Masha's allegedly fraudulent marriage at the time of his trial he would have used the evidence to question her "ability to be truthful" and "motive to establish herself as a victim." Such evidence is not sufficient to warrant a new trial because it merely impeaches Masha's credibility.

Finally, if such evidence were presented to a new jury, it is highly unlikely that it would lead to an acquittal. This is particularly so when Masha was only one of many witnesses to testify as to Campbell's extensive criminal conduct. See Ervin, 540 F.3d at 632; see also United

5

States v. DePriest, 6 F.3d 1201, 1217 (7th Cir. 1993) (holding that newly discovered impeachment evidence did not warrant new trial because conviction was not "premised on the demonstrably dubious testimony of a single witness"). Campbell's claim that it was unfair for the government to present Masha as "all alone here in the U.S." to the jury is similarly meritless, because the government disclosed Masha's marriage before trial, providing Campbell with ample opportunity to challenge the government's characterization.

Because Campbell has failed to present any evidence that the government knew Masha had engaged in a fraudulent marriage, or even that Masha's marriage was in fact a scheme to obtain a favorable immigration status, his motion must fail.

## CONCLUSION

For the reasons set forth above, the court concludes that Campbell's claim of new evidence is without merit, and therefore the interest of justice does not require a new trial. Accordingly, Campbell's motion for a new trial is denied. Given that the government's response brief was timely filed, the court also denies Campbell's motion (doc. 323) to consider the government failure to respond as an admission of error and to grant the relief requested.

**ENTER:** May 18, 2015

_____
**Robert W. Gettleman
United States District Judge**